IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HEALTHPRO PHARMACY & WELLNESS CENTER, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:24-CV-01878-N |
| OPTUMRX INC., | § § § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

This Order addresses Defendant OptumRx Inc.'s ("Optum") motion to compel arbitration [22]. Because the Court finds that Plaintiff Healthpro Pharmacy & Wellness Center ("HealthPro") is estopped from avoiding the arbitration provision at issue here, the Court grants Optum's motion to compel arbitration and stays this case pending arbitration.

**I. ORIGINS OF THE DISPUTE**

This case involves a dispute between HealthPro, a pharmacy, and OptumRx Inc. ("Optum"), a pharmacy benefits manager ("PBM"). The core of the disagreement is over Optum's termination of HealthPro from Optum's benefits network. *See* Pl.'s Am. Compl. ¶¶ 1, 23–27 [20]. The role of a PBM is to act as an intermediary between health insurance plans and pharmacies. Def.'s Mot. 3 [22]. Pharmacies enter agreements with PBMs, called pharmacy network agreements ("PNA"), in order to gain access to health plans to which they can submit claims for payment. *See id.*; Def.'s Appx. 57 [23]. Typically, pharmacies either contract directly with PBMs, or they work through collective groups called pharmacy

services administrative organizations ("PSAO"). Def.'s Appx. 56–57. PSAOs contract with PBMs to allow all the pharmacies in their collective group to submit claims to the health plans affiliated with the PBM. *Id.* at 57.

Here, Optum argues that this dispute is subject to a binding arbitration clause in the PNA and Optum Pharmacy Manual ("OPM") that govern the HealthPro–Optum relationship. Def.'s Mot. 10–14. The relevant PNA originated in 2013 between Optum and another PSAO, United Drugs. Def.'s Appx. 31 [23]. United Drugs subsequently merged with two other PSAOs to form AlignRx. *Id.* at 3. HealthPro then became a part of AlignRx in November 2022. *Id.* at 2. To effectuate this change in PSAO, HealthPro followed the industry standard procedure of updating its pharmacy chain code in a database maintained by the National Council for Prescription Drug Programs. *Id.* In doing so, HealthPro submitted a Pharmacy Affiliation Relationship Affidavit that specifically stated it was affiliated with AlignRx for "3rd Party Contracting" purposes. *Id.* at 6.

The PNA here includes a dispute resolution section providing for informal pre-dispute procedures and then binding arbitration if the pre-dispute procedures are unsuccessful. *Id.* at 26–28. The arbitration provision also provides that questions of arbitrability are themselves subject to arbitration. *Id.* at 26. The PNA incorporates the OPM by reference and provides that "each Pharmacy shall comply with all of the requirements of this Agreement, addenda, exhibits, [and] Pharmacy Manual." *Id.* at 13. Further, the PNA provides that the "Pharmacy Manual may change from time to time . . . [and] such changes shall be binding on Company and Pharmacy." *Id.* at 18. Optum has updated the OPM at least six times since HealthPro joined the AlignRx network. *Id.* at 58.

MEMORANDUM OPINION AND ORDER – PAGE 2

In at least the fifth and sixth updates, the update document specifically notified recipients that there is an arbitration clause contained within the OPM that is binding on participating pharmacies. *Id.* at 59, 73–76.

The OPM's arbitration clause requires the parties to submit to binding arbitration for "any and all issues, disputes, and/or controversies between the parties" and provides that "the arbitrator(s) shall decide any and all questions regarding the arbitrability or the formation, scope, validity, and/or interpretation of the parties' agreement to arbitrate." Pl.'s TRO Appx. 130–131 [5]. Since HealthPro joined the Optum network in 2022, Optum has paid hundreds of thousands of dollars to HealthPro based on claims it submitted to Optum. Def.'s Appx. 57.

In its motion, Optum argues that this dispute is subject to the binding arbitration provisions contained in the PNA and OPM. HealthPro argues that it never agreed to an arbitration clause with Optum and therefore should be permitted to proceed with litigation. However, upon examination of the record, the Court concludes that HealthPro should be estopped from avoiding the arbitration provisions in the PNA and the OPM and therefore grants Optum's motion.

## II. LEGAL STANDARD

The Federal Arbitration Act requires district courts to compel arbitration if they determine that there is a valid arbitration agreement encompassing the issues in dispute. 9 U.S.C. § 3; *see also Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530 (5th Cir. 2019). Courts in the Fifth Circuit conduct a two-step inquiry when considering a motion to compel arbitration.

MEMORANDUM OPINION AND ORDER – PAGE 3

First, the court considers "contract formation—whether the parties entered into any arbitration agreement at all." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). Questions of "an arbitration agreement's existence" are "matters for courts, not arbitrators." *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 515 (5th Cir. 2019). Second, the court interprets the arbitration agreement "to determine whether this claim is covered by the arbitration agreement." *Kubala*, 830 F.3d at 201. The second step is a question for the courts unless "the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim." *Id.* (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). If there is a valid delegation clause, then "the motion to compel arbitration should be granted in almost all cases." *Id.* at 202.

Courts apply state contract law to determine whether the arbitration agreement is valid and if the claims are within its scope, and the party seeking to compel arbitration bears the burden of establishing these elements. *Halliburton*, 921 F.3d at 530–31. Then, if "the court finds that the parties agreed to arbitrate [the claims], the court typically must consider whether any federal statute or policy renders the claims nonarbitrable." *Watson v. Blaze Media LLC*, 2023 WL 5004144, at *2 (N.D. Tex. 2023) (quoting *Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 302 (5th Cir. 2021)).

### III. THE COURT GRANTS OPTUM'S MOTION TO COMPEL ARBITRATION

Optum argues that HealthPro is equitably estopped from denying the arbitration clause in the contract because it has received direct benefits under the contract. The Court,

upon reviewing the record, agrees and holds that equitable estoppel applies to bind HealthPro to the arbitration clauses in the PNA and OPM.

Under California law,[1] "a nonsignatory is estopped from refusing to comply with an arbitration clause when it receives a direct benefit from a contract containing an arbitration clause." *Pillar Project AG v. Payward Ventures, Inc.*, 279 Cal. Rptr. 3d 117, 123 (Ct. App. 2021) (cleaned up) (quoting *Boucher v. Alliance Title Co.*, 25 Cal. Rptr. 3d 440, 444 (Ct. App. 2005)). Texas law similarly instructs that "a nonparty may be compelled to arbitrate if it deliberately seeks and obtains substantial benefits from the contract" containing the arbitration provision. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005). "In assessing that question, courts 'focus[] on the nonparty's conduct during the performance of the contract.'" *Cure & Assocs. P.C. v. LPL Fin. LLC*, 118 F.4th 663, 670 (5th Cir. 2024) (quoting *Weekley Homes*, 180 S.W.3d at 132–33).

Here, this entire dispute stems from Optum's termination of HealthPro from the Optum network. *See* Pl.'s Am. Compl. ¶¶ 13–23. HealthPro's original verified complaint included a claim for breach of contract, citing the PNA and the OPM as the source of that contract. Verified Compl. ¶¶ 15–16, 118–24 [1]. HealthPro has since amended its complaint to remove the breach of contract claim, but still maintains its other claims based on state tort law and federal and state insurance law. *See* Pl.'s Am. Compl. ¶¶ 26–77.

---

[1] The PNA provides that the "Agreement and the rights and obligations of the parties hereunder shall be governed by and construed in accordance with the laws of California, without giving effect to the conflict of laws principles thereof." Def.'s Appx. 30. It is not clear if the OPM selects a specific law, but the outcome here is the same under both California law and Texas law.

MEMORANDUM OPINION AND ORDER – PAGE 5

HealthPro argues that because it "does not allege breaches of" the PNA or the OPM, the doctrine of estoppel can no longer apply. Pl.'s Resp. 6. However, the Court disagrees.

Every claim HealthPro makes stems from its business relationship with Optum — a relationship that began when it joined the AlignRx PSAO and ended when Optum terminated it. During the course of that relationship, HealthPro submitted numerous claims to Optum and received hundreds of thousands of dollars in payments. Def.'s Appx. 57. These claims were all made under the terms of the PNA and the OPM. And before bringing this lawsuit, HealthPro voluntarily initiated the informal dispute resolution process set out in the arbitration clause of the OPM. Def.'s Br. 7; Pl.'s TRO Appx. 191.

Accordingly, it is clear that HealthPro received direct benefits under the contract by way of receiving payments, and still asserts claims stemming from this contractual relationship. Thus, regardless of the fact that HealthPro is not a formal signatory of the PNA or OPM, its actions before and during this litigation establish that it should be estopped from avoiding the binding arbitration clauses contained within them. And the fact that HealthPro amended its complaint to remove the breach-of-contract claim is immaterial when its conduct otherwise establishes that it is subject to equitable estoppel. *See Cure & Assocs.*, 118 F.4th at 667, 670–71 (holding, under both California and Texas law, that a nonsignatory plaintiff that amended its complaint to remove a breach-of-contract claim is equitably estopped from avoiding an arbitration clause when it sought direct benefits under the contract).

Then, the arbitration clauses in the PNA and OPM explicitly delegate the determination of arbitrability to the arbitrators. Def.'s Appx. 26; Pl.'s TRO Appx. 127.

MEMORANDUM OPINION AND ORDER – PAGE 6

And neither party asserts that any federal statute or policy renders the claims in this case nonarbitrable.[2]  Therefore, because HealthPro is estopped from avoiding the arbitration provision, and that provision delegates questions of arbitrability to the arbitrator, the Court grants Optum's motion to compel arbitration.

## CONCLUSION

Because the Court finds that HealthPro is estopped from avoiding the arbitration agreement here, and that agreement delegates the question of arbitrability, the Court grants Optum's motion and hereby orders the parties to proceed in arbitration in accordance with the procedures set out in the OPM.  The Court then stays this case pending the outcome of arbitration and directs the Clerk to administratively close this case.[3]

Signed January 27, 2025.

David C. Godbey
Chief United States District Judge

---

[2] HealthPro does argue that enforcement of the arbitration provision would be unconscionable and that the contract in this case is illusory.  Pl.'s Resp. 7.  However, in doing so, HealthPro makes only conclusory assertions and fails to give any explanation or analysis as to how or why the arbitration clause is unconscionable or the contract illusory.  This is insufficient for HealthPro to meet its burden to prove these defenses.  *See Chin v. Advanced Fresh Concepts Franchise Corp.*, 123 Cal. Rptr. 3d 547, 552 (Ct. App. 2011) (noting that the party seeking arbitration "bears the burden of proving that an agreement to arbitrate exists, and the opponent has the burden of proving the facts of any defense to enforceability.").

[3] Optum moves to either dismiss or stay this case pending arbitration.  However, the FAA requires a court to stay, rather than dismiss, a lawsuit involving an arbitrable dispute.  *Smith v. Spizzirri*, 601 U.S. 472, 477–79 (2024).  Accordingly, the Court will stay this case rather than dismiss it.

MEMORANDUM OPINION AND ORDER – PAGE 7